MICHAEL SMITH v. MOUNTAIN ICE COMPANY.

Submitted July 5, 1906—Decided November 12, 1906.

Plaintiff, while employed in moving blocks of ice along a runway with an ice-hook, stood alongside of the runway on a platform that was provided by the defendant with a single rail on the side farthest from the runway. By reason of the sudden slipping of his ice-hook while he was pulling on it, plaintiff fell backwards against the rail, carrying it with him to the ground. *Held*, that the defendant's liability depended upon the sort of protection this rail was apparently designed to afford to the plaintiff, and that the question thus presented was for the jury, not the court.

On rule to show cause.

Plaintiff was employed by the defendant in filling its ice-house. The ice, which was in blocks weighing about two hundred and fifty pounds, was lifted by an elevator to a runway that ran to the ice-house at a distance of twenty feet from the ground. Along this runway the blocks of ice were pushed or pulled, as the case might be, by means of ice-hooks, by the defendant's servants, of which the plaintiff was one. While thus employed the men stood on a gangway alongside of and on the same level as the runway, from which it was separated by a piece of timber, six by six, which served to keep the ice on the runway and at the same time formed the side of the gangway next to the runway. There was no railing on this side of the gangway, which was where the men worked with their ice-hooks, but on the opposite side of the gangway there were three posts about four feet high, on the tops of which was nailed a single rail, the length of which was variously put at from sixteen to twenty feet, and its width and thickness from three by two inches to two by one inch, one of the plaintiff's witnesses describing it as a shingling lath, two by one. The span between posts was either eight or ten feet. The gangway itself was three feet wide. The accident to the plaintiff was that his ice-hook slipped or lost its hold in a

block of ice while he was pulling on it, and that, by reason of this sudden release of his hook, the plaintiff fell backwards, with this momentum added, against the rail on the opposite side of the gangway, which left the posts and was carried to the ground with the plaintiff. Whether the nails pulled out of the posts or out of the rail; whether the posts or rail were rotten or sound, and whether the rail broke or not, were disputed questions upon which the testimony was in direct conflict.

Upon the question of the duty owed by the defendant to the plaintiff, the trial court charged the jury as follows:

"In this case the master evidently recognized the fact that working on the platform—on the walk, as it has been called —was working in a dangerous place, and provided a protection for its servants, namely, this rail which was alongside. Having done that, the servant going to work there, with knowledge of what had been provided for his protection, had a right to rely upon that, and had a right to feel secure that he would not be injured by anything which he could not see. If he saw that it was out of order, that would be one thing; but if, by ordinary observation, it appeared to be in good condition, then he had a right to depend upon it, and the duty of the master was to take reasonable care that it was in good condition, and that reasonable care required the master to make inspections of it from time to time—reasonable inspection—to see that it was in good condition."

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and SWAYZE.

For the plaintiff, *Charles Stilwell, Jr.*

For the defendant, *Willard W. Cutler.*

The opinion of the court was delivered by

GARRISON, J. The charge of the trial court to the jury, as applied to the concrete case before it, was that the rail had been provided by the defendant for the protection of the

plaintiff from accidents such as that by which he was injured. The questions left to the jury were whether the rail was in good condition; whether the defects in it, if any, were latent, and whether a proper inspection had been made; but at no time was it left to the jury to say whether the rail had been provided to secure the plaintiff in case of accidents such as that which occurred, or whether its construction indicated that it was apparently designed to withstand such violent impacts. An affirmative answer to one or the other of these propositions was essential to the plaintiff's right of recovery. Upon this review of the trial, the question is whether such answer must come from the jury, or whether it is enough if it comes from the court, and this depends in turn upon whether the protection the rail was apparently designed to furnish was a matter about which reasonable minds could not honestly differ. If the question was of this indisputable character, the trial judge was right in treating it as a court question.

In the case of *Saunders* v. *Eastern Hydraulic Brick Co.*, 34 *Vroom* 554, the question whether a mullion in a skylight was apparently designed to withstand the weight of the plaintiff was held to be of this indisputable character, and a nonsuit based upon the trial court's determination of such question was sustained.

Between those cases, however, where a fact that is essential to the plaintiff's recovery is so plainly lacking that a nonsuit should be ordered and those in which such fact is so indisputably established in the plaintiff's favor that the jury should be so instructed lies the great mass of what are significantly called disputed matters of fact. Such disputed matters need not consist of contradictions in the testimony. If opposite inferences may reasonably be drawn from uncontradicted testimony, a substantial dispute is presented. It is needless to say that all such disputes are for the jury. In the present case the nature of the protection the rail was designed to afford seems to me to lie within this debatable area, so that it was no more competent for the trial court to decide that it

was unquestionably provided to withstand violent impacts of the servant's body than it would have been for the court to decide that it was obviously not constructed to withstand such impacts, and hence to have nonsuited the plaintiff. Either of these decisions of this question of fact must rest upon the inferences to be drawn from the construction of the railing, its size and supports, the length of its span, its uses in connection with other parts of the defendant's plant. A good deal might be said on each side of the question, so that, while not suggesting for a moment that the trial judge reached an erroneous conclusion upon this question, I am satisfied that he should not have reached any conclusion that resulted in withholding from the jury the determination of a debatable question of this fundamental character, for it will not be contended that, if the appearance of the rail and its construction indicated that it was not designed to withstand violent impacts or to afford protection in such cases, the plaintiff had a right to rely upon such protection. Such a situation would in principle be indistinguishable from the decision above cited where the man relied upon the strength of the mullion to support his weight. If the inadequacy of the railing in this case had been as clear as the inadequacy of the mullion in that case, the plaintiff should have been nonsuited. We do not think that such inadequacy incontestably appeared, but neither do we think that it incontestably appeared that the railing was provided to withstand the shock resulting from accidents such as the plaintiff's. If neither of these facts were placed by the testimony beyond reasonable dispute, the question should have been left to the jury, and for the failure of the trial court so to leave it the verdict in this case must be set aside.

The defendant's rule is made absolute.